## TILLOTSON *vs.* THE HUDSON RIVER RAILROAD COMPANY.

The plaintiff owned a dock, on the margin of a bay on the east side of the Hudson river, fronting his farm, under a patent from the state, issued November 19, 1849. The defendants, pursuant to their charter, constructed their railroad across the bay, running about 1900 feet west from the plaintiff's dock. The plaintiff called upon the company to extend his dock to, and in front of, their road, as a measure required by the defendants' charter, and necessary to restore the dock to its former usefulness. The defendants refused to do so, but constructed a drawbridge, which was sufficient for the free passage of vessels into and from the bay. *Held,* that the defendants were not bound, under the 15th section of their act of incorporation, to extend the plaintiff's dock; the same not being " cut off," within the meaning of that section.

The legislature did not intend to go beyond what a literal interpretation of the statute calls for, and require the company thereby incorporated to extend the docks on the streams and bays.

THIS was an appeal by the plaintiff from a judgment entered against him at a special term, upon demurrer. The complaint stated that the plaintiff was the owner of a farm situated in the town of Red Hook, Dutchess county, fronting on the Hudson river, and of a dock, adjoining said farm, built in the year 1836,

Tillotson v. Hudson River Railroad Co.

·which had since been in continued use for commercial purposes. That the defendants became incorporated May 12, 1846. That in 1848 they located the line of their road across the front of said farm, in the rear of the dock, and filed a map of such location in the county clerk's office. That the plaintiff obtained a grant from the state, for said dock, by letters patent, dated November 19, 1849. That in 1850, the defendants located the present line of their road across the bay, at some distance in front of said dock, and in 1851 constructed their road, by a structure of pile bridging, completely cutting off said dock from the navigable waters of the river, leaving no access except through a drawbridge. That the plaintiff, before the location of either line of said road, constructed a road through his farm, from the public road to said dock. That by the 15th section of their charter the defendants were bound, in case any dock should be cut off by the railroad, "to extend or so improve the same as to restore it to its former usefulness so far as practicable;" and that the only improvement which would in any degree restore the dock in question to its former usefulness, was its extension to a reasonable distance beyond the outer line of said road. That the plaintiff caused certain notices to be served on the company, informing them of his rights, and demanding an extension of his dock, according to the terms of the act, and that they refused compliance. That the plaintiff had been, and still was, the owner of said farm and dock, and that the defendants had not complied with the terms of the 15th section of their charter, but had refused to do so; wherefore the plaintiff prayed that the defendants might, by the judgment of this court, be compelled to extend the said dock, or to improve the same, as required by the said 15th section of their charter; and for general relief.

The answer denied the construction by the plaintiff of a dock which had been in continued use for commercial purposes, but stated that the same, if erected, was for the private use and pleasure of the plaintiff: that the water in front was not navigable at low water, for boats of any considerable draft; that said dock was situated in a deep bay about half a mile from

the channel of the river, and that no boats were accustomed to navigate the same for commercial purposes; that such erection was in subordination to the rights of the people of the state, and of the defendants, under their charter. It denied that the public had any highway to said dock; and averred that the second survey, on the present line, was known to the plaintiff before the receipt of his letters patent, and that the change from the first survey was expedient and necessary. The defendants demurred to that part of the complaint respecting the change of location of the road, from the line previously located, on the grounds that they had the right to change the location of their road; that in constructing a drawbridge through their road they had complied with the law in respect to crossing bays; that by the complaint it appeared that no dock was cut off by said road, but that the railroad ran a great distance in the river, outside of the plaintiff's dock; and that the road not cutting off the dock, the defendants were not bound to extend the same. The defendants further answered and denied the practicability of the extension, or that they were bound to attempt it, because the road runs near half a mile west of said dock, and they had made a drawbridge, to provide for the navigation of the bay.

The plaintiff demurred to that part of the answer in which the defendants denied that the public had any road or highway to the dock, and averred that any means of access thereto was across the farm of the plaintiff, which could only be used by his especial permission. The ground of demurrer was that the conditions on which the letters patent were granted were fulfilled without the dedication to the public of the road through the plaintiff's farm to said dock. The plaintiff also demurred to that part of the answer which stated that the railroad was nearly half a mile distant from the plaintiff's dock, and that a drawbridge had been constructed by the company; the ground assigned being that it was no defense to the action, that the road was at a distance from the dock, or that the defendants had made a drawbridge.

The judge, at special term, gave judgment for the defendants,

on the demurrers, upon the ground that the plaintiff's dock was not cut off, within the meaning of the act.

*G. Tillotson*, for the plaintiff.

*T. M. North and J. Thompson*, for the defendants.

*By the Court*, S. B. STRONG, J. The plaintiff is the proprietor of a dock on the margin of a bay on the east side of the Hudson river, fronting his farm, in the town of Red Hook, under a patent from this state, issued pursuant to a resolution of the commissioners of the land office, dated on the 19th of November, 1849. The defendants have, pursuant to their act of incorporation, passed on the 12th of May, 1846, constructed their railroad across the bay, running about 1900 feet west from the plaintiff's dock. The plaintiff called upon the company to extend his dock to, and in front of, their road, as a measure required by the charter of the defendants, and necessary to restore it to its former usefulness. The defendants have refused to do so, but have constructed a drawbridge, which is sufficient for the free passage of such vessels as have heretofore passed into and from the bay, and contend that nothing more is required by their act of incorporation. The question between the parties arises on the 15th section of the act, which is in the following words : " § 15. The said corporation is hereby authorized to build or erect a bridge over Spuytenduyvel creek, and other navigable streams or inlets, for the said road or ways from or to the city of New-York. Such bridges shall be substantially constructed, and shall contain a draw of sufficient width to admit the passage of vessels adapted to the navigation of the said river, streams or inlet, with standing masts, and shall be so attended as not to obstruct, delay or hinder the progress of any vessel navigating the said river. They are also required to construct such bridges as may be necessary to provide for the passage of such vessels and boats as heretofore have [passed] or now can pass, into and from the same, the bays that may be crossed by said railroad ; and if any wharf or dock

shall be *cut off* by the said railroad, the said company shall ex tend, or so improve the same, as to restore it to its former use- fulness, so far as it may be practicable to do so, and the owner or owners thereof are hereby authorized to occupy the river front *outside* of said railroad, for the erection and use of wharves or docks."

The legislature, in enacting this section, seems to have de- signed to protect the interests of the proprietors of three dis- tinct classes of docks : first, those on the navigable streams or inlets ; secondly, those on the bays from which there might be a free passage for vessels through the opening of a drawbridge ; and thirdly, those which might be *cut off* by the road.    The provisions relative to the crossing of the streams, inlets and bays, do not particularize docks, but they were no doubt designed for the protection of the interests of the proprietors of all the property on those waters, and especially of that species which is the most essential to their profitable use.    Such proprietors have all the indemnity which is constructively granted where authority is given to bridge our navigable waters.    The con- nection between the docks on those waters and the channel or navigable part of the Hudson river, although modified, is not *severed* or *destroyed*.    The terms used by the statute to desig- nate the docks to be extended are explicit and forcible.    They are those which have been " *cut off* "—that is, entirely separated. Now from what has the plaintiff's dock been wholly severed ? Not certainly from the land, nor one part of it from another, nor from the contiguous waters.    Nor has its connection with the navigable part of the river been destroyed.    The passage may be narrowed to the width of the drawbridge, but is not destroyed, or if the provisions of the act relative to drawbridges have been fully carried out, seriously impaired.

There are some considerations of great weight to show that the legislature could not have intended to go beyond what a literal interpretation of the act calls for, and require this com- pany to extend the docks on the streams and bays, (for in this respect those on each are in the same category,) to the railroad. (1.) There is no express grant of the intervening lands or of

the right to take and occupy them. Possibly if the requisition had been positive, and there had been nothing in the statute to raise an inference to the contrary, the necessary power and right to carry out might have been implied. But, as has been shown, a literal interpretation of the statute is the other way. Even when the duty of extending the dock beyond the road is required in clear and explicit terms, the right to take and occupy the lands in front was not left to inference, but was expressly granted. The inclusion of a grant of lands to a small extent, on the outside of the road, excludes the mere implication of a grant of much more extensive territory on the inside of it, and indeed raises an inference that no such intermediate territory would be called for by the provisions of the statute. (2.) It could not have been designed to impose upon the defendants a burthen of an unusual character, and one which was not absolutely necessary for the indemnity of the parties whose interests might be affected. It was undoubtedly supposed that the then contemplated enterprise would prove to be, as it is, highly beneficial to the public. Much doubt was entertained, and (as it has turned out,) with reason, as to its productiveness to the stockholders, and capitalists were therefore reluctant to engage in it. These considerations called for a liberal charter, and no doubt the legislature intended to grant one of that character, certainly not one weighed down by burthens too heavy to be borne. It was well known that the road must necessarily cross many streams and bays, on the margin of which there were numerous docks. The legislature must have seen, and if not, it must have been perceptible to the applicants, that to carry out all the docks on those waters beyond the road, would have been productive of an expense which the company, pressed down as it was with the numerous difficulties resulting from the many obstacles which it had to encounter in the construction of the road, could not have sustained. Certainly the legislature could not have intended to impose, nor the company to encounter, any unnecessary burthen. It has long been the policy of this state, (sanctioned by repeated decisions of our courts,) to grant new franchises without any provision for com-

pensation to the proprietors of previous ones, for consequential damages, so long as the older franchises are not directly invaded. That course is required by the public interests, and grantees of such franchises may well be supposed to take them subject to the reservation and exercise of this power. In the cases under consideration, a reasonable (although possibly not a full) indemnity against loss has been clearly granted. To extend it by inference, as the plaintiff requests, would be productive of an expense in most cases far beyond the value of the dock, or at any rate would greatly exceed the damages sustained. Had the legislature designed that a full indemnity should be extended to these dock proprietors, provisions would have been made to ascertain, and enforce the payment of the damages *actually* sustained. No principle of public policy or justice would have required any thing further. If in any instances where private property has been taken for public purposes, compensation far beyond its value and the consequent damages, has been exacted, they have been very rare, and an intent to adopt a measure which would so effectually retard public improvement ought not to be inferred. If the requisition had extended, and been confined to the actual damages in those cases, the amount, when there are convenient drawbridges, could not have been very considerable, and might have been paid without subjecting the company to any very serious inconvenience. The *argumentum ab inconvenienti* should not be used to contradict the plain and obvious import of a statute, but it may be adopted with propriety to negative the applicability of a statutory provision to objects not literally and clearly included. (3.) In several of the streams and bays crossed by the railroad, the docks are quite numerous, and situated near to each other. Extensions of such, to and over the road, would seriously obstruct the navigation, and injure the fisheries in those waters. It cannot be reasonably inferred that the legislature would require a procedure which would prove so prejudicial, and which would be productive of damages for which no compensation has been, or could be, effectually provided, and

especially in an enactment evidently designed for the special protection of one of those interests.

Upon the whole I am satisfied that the legislature did not confer upon the plaintiff the right which he demands and seeks to enforce in this action. It has provided the usual, and a reasonable preventive against loss in such a case, and with that he must be content.

The judgment of the special term must be affirmed with costs.

[Dutchess General Term, July 4, 1853. *Barculo, Brown* and *S. B. Strong,* Justices.]